THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   KADEN MARSHALL,                           CASE NO. C12-1335-JCC

10                        Plaintiff,          ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
11          v.                                MOTION FOR SUMMARY
                                              JUDGMENT
12   DAVID L. HERTZOG, *et al.*,

13                        Defendants.

14

15          This matter comes before the Court on the "Mercer Island" Defendants' motion for

16   summary judgment. (Dkt. No. 17.) Having thoroughly considered the parties' briefing and the

17   relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and

18   DENIES IN PART Defendants' motion for the reasons explained herein.

19   **I.      BACKGROUND**

20          In August 2010, Kaden Marshall, like many Seattleites, spent his Seafair Saturday on

21   Lake Washington enjoying the sunshine, having some drinks, and watching the Blue Angels as

22   they prepared for the Sunday exhibition. (*See* Dkt. No. 20 at 9.) Mr. Marshall owns a 20-foot ski

23   boat, and unsurprisingly, was able to recruit a few friends with whom he could spend the day out

24   on the lake. To be safe, however, Mr. Marshall (wisely) enlisted his friend Nick Homer to serve

25   as the designated boat driver for the day, since Mr. Marshall planned to consume alcohol while

26   on the boat. (*Id.* at 9–10.) And for three hours—from approximately noon to 3:00 p.m. on August

7, 2010—Mr. Marshall and his friends consumed alcohol while on his boat in Lake Washington. (*Id.* at 8–9.) The exception was Nick Homer, who as the designated driver, refrained from drinking. (*Id.* at 8, 12.)

Also on Lake Washington that day were Mercer Island Police Officer David Herzog and Washington State Trooper James Miller. ("Officers"). These two officers were working Seafair weekend together as part of a Joint Taskforce, and were cruising Lake Washington in a Mercer Island Patrol Boat. (Dkt. No. 18 at ¶ 2.) Around 3:00 p.m. that afternoon, Officers Herzog and Miller witnessed an individual riding on the "transom" of a 20-feet ski boat while the boat was underway in a no-wake zone just south of the I-90 floating bridge. (*Id.* at ¶ 9.) Having witnessed this conduct, the officers approached the vessel, which turned out to be Mr. Marshall's boat, directed that the boat be stopped, and informed Mr. Homer, the boat's driver, that the boat was stopped because a passenger was riding on the stern. (*Id*; Dkt. No. 20 at 12–13.) Mr. Homer complied with the officers' directive, stopped the boat, and upon request, informed the officers that he did not possess a boater safety education card as required under Washington law. (*Id.*) The officers then requested the boat's registration, which Mr. Marshall, as the boat's admitted owner, provided to the officers. (Dkt. No. 20 at 12–13.) Mr. Marshall also stated that he had a boater education card. (*Id.* at 19.)

Shortly thereafter, the officers inquired as to whether Mr. Marshall was responsible for the actions of Mr. Homer, the boat's driver. (*See id.* at 13–14.) The exact quotes of this interaction are subject to differing accounts by the witnesses, but all are consistent in that Mr. Marshall affirmed that he owned the boat and was in some way responsible for the passengers' and Mr. Homer's actions. (*Id.* at 13–14, 19, 24, 27.) Mr. Marshall also admitted, and does not now dispute, that he was intoxicated. (*Id.* at 24, 27–28.) Under the officers' creative interpretation of the Washington Boating Under the Influence statute, *see* RCW § 79A.60.040(2), they concluded that Mr. Marshall had admitted the facts necessary to constitute a violation thereof, and the officers—contrary to all common sense—arrested Mr. Marshall for Boating

Under the Influence. According to the officers' own testimony, however, Mr. Marshall was not observed driving the boat. (Dkt. No. 20 at 18 ("[T]he only reason why I remember this case is because this driver was not actually driving at the time[.]"). Finally, neither party disputes that the boat's driver, Mr. Homer, had not been drinking and was not intoxicated. (Dkt. No. 20 at 8, 12.)

Following Mr. Marshall's arrest, he was taken to shore, cited, and criminally charged with Boating Under the Influence. (Dkt. No. 22 at 9–10.) Upon the State's subsequent motion to dismiss, however, the King County District Court dismissed the charge with prejudice. (*Id.* at 10.) This lawsuit followed, in which Mr. Marshall alleges that the officers' actions constituted a violation of his right to be free from unreasonable seizure under the Fourth Amendment. In addition to this § 1983 claim for false arrest, Plaintiff also brings an excessive force claim; claims against Mercer Island Police Chief Ed Holmes in his individual and official capacities (as well as a *Monell* claim against the City of Mercer Island) for failure to train and failure to prevent the alleged constitutional deprivation; and state law claims for false arrest and negligence.

Defendants Herzog, Holmes, and the City of Mercer Island ("Mercer Island Defendants") now move for summary judgment, arguing that Officer Herzog is entitled to qualified immunity and that Plaintiff's claims are unsupported by admissible evidence. As explained below, the Court denies the motion insofar as the Defendants seek dismissal of Mr. Marshall's § 1983 and state law false arrest claims based on Officer Herzog's qualified immunity. However, because Plaintiff has otherwise failed to support his contentions in the face of a motion for summary judgment, summary judgment is granted with respect to his remaining claims.

//

//

//

//

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 3

## II.   DISCUSSION

### A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making such a determination, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non–moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.   Plaintiff's § 1983 False Arrest Claim and Qualified Immunity

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest, which constitutes a "seizure," is "unreasonable" and thus unconstitutional if it is not supported by probable cause—*i.e.*, if "the facts and circumstances within [the arresting officer's] knowledge are [not] sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). Thus, to prevail on a § 1983 claim for false arrest, a plaintiff must "demonstrate that there was no probable cause to arrest him." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir.2010) (en banc). "[P]robable cause does not exist where a police officer arrests an individual for activities that do not constitute a violation of

1   the law." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065–66 (9th Cir. 2004).

2       Even if an individual demonstrates a violation of a constitutional right, however,

3   "[q]ualified immunity shields government officials from civil damages liability unless the

4   official violated a statutory or constitutional right that was clearly established at the time of the

5   challenged conduct." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013) (citing

6   *Reichle v. Howards*, --- U.S. ---, 132 S. Ct. 2088, 2093 (2012)). Ultimately, "[a]ssessing whether

7   an official is entitled to immunity is a two prong inquiry[,]" and the Court may address the

8   prongs in whichever order it deems appropriate under the circumstances. *Id.* Under the first

9   prong, the Court determines whether, "[t]aken in the light most favorable to the party asserting

10  the injury, [] the facts alleged show [that] the officer's conduct violated a constitutional right[.]"

11  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under the second prong, the Court

12  determines whether the right allegedly violated was "clearly established"; to be clearly

13  established, "the contours of the right must be sufficiently clear that a reasonable official would

14  understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483

15  U.S. 635, 639 (1987)).

16      In the context of a false arrest claim, the Ninth Circuit has summarized the requisite

17  qualified immunity analysis. The Court first determines whether there was probable cause for the

18  arrest, without which the arrest is unconstitutional. *Rosenbaum*, 663 F.3d at 1076. Even if an

19  unconstitutional arrest occurred, however, an officer may still be entitled to qualified immunity if

20  "it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable

21  officers could disagree as to the legality of the arrest such that the arresting officer is entitled to

22  qualified immunity." *Rosenbaum*, 663 F.3d at 1076 (emphasis in original); *see Norse*, 629 F.3d

23  at 978 ("a government official is entitled to qualified immunity on a false arrest claim if a

24  reasonable officer in his position could have believed that probable cause existed"). Ultimately,

25  the "linchpin of qualified immunity analysis is the reasonableness of the officer's conduct."

26  *Rosenbaum*, 663 F.3d at 1076.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 5

Here, the officers arrested Mr. Marshall for Boating Under the Influence, in violation of RCW § 79A.60.040(2). At the time of his arrest, that provision provided as follows:

> It shall be a violation for a person <u>to operate</u> a vessel while under the influence of intoxicating liquor[.] A person is considered to be under the influence of intoxicating liquor [] if:
>
>> (a) The person has 0.08 grams or more of alcohol per two hundred ten liters of breath, as shown by analysis of the person's breath[]; or
>>
>> (b) The person has 0.08 percent or more by weight of alcohol in the person's blood, as shown by analysis of the person's blood[]; or
>>
>> (c) The person is under the influence of or affected by intoxicating liquor[]; or
>>
>> (d) The person is under the combined influence of or affected by intoxicating liquor and any drug.

RCW § 79A.60.040(2)(a)–(d) (emphasis added). To "operate" a vessel within the meaning of this provision "means to steer, direct, or otherwise have physical control of a vessel that is underway." RCW § 79A.60.010(16). Contrary to Defendants' assertions, addressed in detail below, to "operate" as defined in the statute does not include a situation where a non-driver exercises "actual authority" over the individual driving the vessel. *Compare* RCW § 79A.60.010(16) (defining "operate," which is used in RCW § 79A.60.040(2)) *with* RCW § 79A.60.010(17) (defining "operator," which is not used in RCW § 79A.60.040(2)). In simple terms, these provisions make it a crime to drive a boat while under the influence of alcohol.

Thus, the question that determines whether Officer Herzog is entitled to qualified immunity for his decision to arrest Mr. Marshall is as follows: Could a reasonable police officer in his position—*i.e.*, knowing the facts he knew at the time of the arrest—have believed that probable cause existed to arrest Mr. Marshall, who was concededly intoxicated, for "steer[ing], direct[ing] or otherwise hav[ing] physical control of" his boat while it was "underway." *See Norse*, 629 F.3d at 978; RCW §§ 79A.60.040(2), 79A.040.010(16). The clear answer to this question, which encompasses the answer to both steps of the qualified immunity analysis, is a resounding "no." The officers did not have probable cause to arrest Mr. Marshall for Boating

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 6

1   Under the Influence, and no reasonable officer could have reached such a conclusion.

2           As explained above, all parties agree that Mr. Marshall was not driving the boat when it

3   was initially stopped or at any point thereafter. Further, Mr. Marshall never drove or "operated"

4   the boat on August 7, 2010, and the officers were never told that Plaintiff had driven or

5   otherwise exercised physical control over the direction of the boat. As noted above, the officers'

6   own statements confirm this fact. (Dkt. No. 20 at 18 ("[T]he only reason why I remember this

7   case is because this driver was not actually driving at the time[.]"). Rather, Mr. Marshall had

8   specifically enlisted Mr. Homer as his designated driver. Defendants concede this much in their

9   briefing, and accordingly focus their efforts on the erroneous argument that Mr. Marshall

10  "operated" the boat because he allegedly exercised actual authority over the driver. In short, no

11  reasonable police officer could have found that probable cause existed to believe Mr. Marshall

12  was operating his boat under the influence of alcohol, because no officer saw him "operate the

13  boat," and no other person stated that he had "operated" the boat at any point.

14          To dispute this inevitable conclusion, Defendants offer a contrived reading of the

15  applicable statute, and further argue that even if the officers' interpretation of the statutory

16  provisions was erroneous, their interpretation was nonetheless reasonable, thereby entitling them

17  to qualified immunity. As previewed above, Defendants use the definition of "*operator*" as it is

18  defined under RCW § 79A.60.010(17) to argue that "Marshall was '*operating*' the vessel—

19  within the meaning of the term—at the time of the arrest[,]" because he exercised "actual

20  authority" over Mr. Homer, the boat's driver. (Dkt. No. 17 at 8) (emphasis added). To support

21  this argument, Defendants (confusingly) assert that "to operate" as defined in the BUI statute—a

22  verb—means "an individual who steers, directs, or otherwise has physical control of a vessel that

23  is underway *or exercises actual authority* to control the person at the helm." RCW §

24  79A.60.010(17). On this basis, Defendants reason, when Mr. Marshall affirmed that he was the

25  boat's owner and was "responsible" for the driver's and passengers' actions, he admitted to

26  exercising "actual authority" as a "captain" over Mr. Homer, the "helmsman." This, the officers

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 7

argue, gave them probable cause—or a reasonable basis to erroneously find probable cause—to arrest Mr. Marshall.

Defendants' argument is wrong. Conveniently, Defendants omit any and all reference to RCW § 79A.60.010(16), which actually defines the verb "operate" for purposes of the BUI statute. That provision, as discussed above, contains no "actual authority" basis for the term "operate." Instead, the BUI provision requires that a *person* must *operate*—*i.e.*, steer, drive, or exercise *physical control* over—the vessel. *See* RCW § 79A.60.010(16). The term "operator"—upon which Defendants base their argument, and which immediately follows the definition of "operate" in the definitional provision—is not contained in RCW § 79A.60.040(2), the provision that Defendants assert Mr. Marshall violated.[1] Given these plain statutory definitions, which are not ambiguous, it was not a reasonable mistake to believe that Mr. Marshall was "operating" the boat within the meaning of the statute based on any "actual authority" argument.[2] *See, e.g.*, *Rosenbaum*, 663 F.3d at 1078 (denying qualified immunity in false arrest case and explaining that "[a]s our analysis establishes, the statute is unambiguous, and not susceptible to the [county's reading]. Therefore, no reasonable officer could believe that Rosenbaum's conduct violated the statute."); *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011) (denying

---

[1] Unsurprisingly, however, the term "operator," as defined in RCW § 79A.60.010(17), is used in other sections of the Washington Revised Code that relate to boating safety, thus demonstrating that the Washington legislature knew the difference between the terms now at issue and chose to use them in different scenarios. *Cf.* RCW § 79A.60.080 (an "operator" commits a gross misdemeanor when he or she willfully fails to stop when requested by law enforcement); RCW § 79A.60.090 (an operator who eludes law enforcement commits a class C felony). Nonetheless, it appears that a specific section of the secondary source upon which Defendants rely—the Washington Practice Series, *see* 32 Wash. Prac. § 11.1 (2013-13 ed.)—also fails to cite the definition of "operate," opting instead to cite the definition of "operator." Curiously, the same source properly states the elements of the crime in the following section. *Id.* § 11:2 ("[T]he prosecution must prove . . . that the person operated a vessel . . ."). Notwithstanding this omission on the part of this source, the Court finds that the statute's definitions are plain and unambiguous, and declines to rely on the cited secondary source, which cites in support of its statement only the statutory definition of "operator."

[2] Even if Defendants' statutory argument was correct, there would exist a genuine dispute of material fact with regard to whether Mr. Marshall was(or whether the officers could have reasonably concluded that he was) *exercising* actual authority over Mr. Homer at the time of the arrest given the parties' differing accounts of Mr. Marshall's statements and the lack of any additional evidence to suggest that he was in fact directing Mr. Homer's control of the boat.

qualified immunity because the officer's mistake was unreasonable). In light of this simple analysis, the Court is confounded as to how Defendants' counsel could argue with a straight face that their proffered reading of the statute is a reasonable interpretation of its provisions.

To the extent Defendants argue that the lack of case law interpreting RCW § 79A.60.040 requires a finding that the right at issue was not clearly established, the argument is also without merit. The right to be free from an unreasonable seizure—*i.e.*, to be free from a warrantless arrest that is unsupported by probable cause and for conduct that does not constitute a criminal violation—is clearly established, and the lack of a case on all fours with the facts at hand is not sufficient to confer qualified immunity. *See Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) ("The Supreme Court has made clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment."); *see, e.g.*, *Rengo v. Cobane*, No. C12-0298, 2013 WL 3294300, at *6 (W.D. Wash. June 2, 2013) ("The constitutional right to be free from warrantless arrest without probable cause [is] 'clearly established[.]'"). As explained above, the plain terms of the Washington Revised Code establish the criminal violation at issue, and the lack of case law discussing its basic elements does not render ambiguous the clear terms of the statute that defines the crime. Given the clear statutory definition, any reasonable police officer—*i.e.*, any officer who had read the applicable laws—would know that none of the facts at hand were sufficient to establish probable cause.

Finally, Defendants do not expressly argue that they had probable cause to arrest Mr. Marshall for "negligent operation" or illegal bowriding—they only raise the issue (at length) as it relates to probable cause to stop the boat in the first place.[3] Nonetheless, even if Defendants' assertions are construed as arguing that probable cause existed to arrest Mr. Marshall for illegal

---

[3] The term "bowriding" is commonly understood to include "riding on the stern or transom" of a boat, as the individual on Mr. Marshall's boat was doing. It does not refer only to riding on the "bow" of a boat.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 9

bowriding or "negligent operation," such an argument would be without merit for multiple
reasons. First, the argument fails for the same reason as the Boating Under the Influence
argument above. Specifically, RCW § 79A.60.030 states in relevant part that "[a] person shall
not <u>operate</u> a vessel in a negligent manner." *See* RCW § 79A.60.030 (emphasis added). Because
Mr. Marshall was not "operating" the boat as that term is defined in RCW § 79A.60.010(16), the
fact that an individual on the boat was "bowriding" in violation of Mercer Island's Municipal
Code—even if it did, as Defendants argue, give rise to a violation of RCW § 79A.60.030 by the
person actually operating the boat for negligent operation—the appropriate suspect would have
been Mr. Homer, not Mr. Marshall. Accordingly, because the officers knew of no facts to
support the belief that Mr. Marshall was committing or about to commit the infraction of
negligent operation by operating the boat in a negligent manner—*i.e.*, permitting another
individual to ride on the stern while operating a boat—no reasonable officer could have
concluded that probable cause existed to support his arrest on this basis.

       Second, even assuming Mr. Marshall could have violated RCW § 79A.60.030 by
allowing another passenger to ride on the stern of his boat (while he was not driving), a violation
of that section constitutes only a civil infraction under RCW ch. 7.84, "except as provided in
RCW § 79A.60.020." RCW § 79A.60.030; *see* RCW § 79A.60.020 (violation of chapter only
designated as a misdemeanor "if the current violation is the person's third violation of the same
provision . . . during the past [365] days."). Because no party disputes that Mr. Marshall's
hypothetical violation for bowriding and/or negligent operation would not be a criminal offense,
the officers would have been without authority to arrest him, and there could be no probable
cause to make such an arrest. *See* RCW § 10.31.100 (officers may make warrantless arrests for
felonies based on probable cause, and for misdemeanors and gross misdemeanors only when the
offense is committed in the presence of the officer); RCW § 7.84.100 (decriminalizing and
making a civil infraction certain offenses under RCW ch. 79A, including negligent operation).
Accordingly, Defendants' "negligent operation" argument would fail. Officer Herzog is not

1   entitled to qualified immunity on Plaintiff's § 1983 false arrest claim.

2       **C.**    **Plaintiff's Remaining Claims**

3           **1.**    **Excessive Force**

4           In addition to the claim above, Defendants move for summary judgment on Plaintiff's

5   § 1983 excessive force claim. (Dkt. No. 17 at 5 n.2.) In the Ninth Circuit, courts "analyze all

6   claims of excessive force that arise during or before arrest under the Fourth Amendment's

7   reasonableness standard[.]" *Coles v. Eagle*, 704 F.3d 624, 627 (9th Cir. 2012) (citing *Graham v.*

8   *Connor*, 490 U.S. 386 (1989)). "[T]he 'reasonableness' inquiry in an excessive force case is an

9   objective one: the question is whether the officers' actions are 'objectively reasonable' in light of

10  the facts and circumstances confronting them, without regard to their underlying intent or

11  motivation." *Graham*, 490 U.S. at 397.

12          Here, Defendants state in a brief footnote that they assume Plaintiff has withdrawn his

13  excessive force claim, because "[t]here is no dispute that Marshall cooperated with the officers

14  and submitted—without any struggle—to being handcuffed[,]" and because Mr. Marshall

15  "admits the officers were 'reasonable' with him" in deposition testimony. (Dkt. No. 17 at 5 n.2;

16  Dkt. No. 20, Ex. C at 25–26.) In response to Defendants' motion, Plaintiff neither addresses nor

17  provides evidence relating to his excessive force claim. Given this failure, and Mr. Marshall's

18  own deposition testimony that the officers were "professional" and "courteous," and that they

19  "proceeded reasonably" with him during the arrest, the Court finds that Mr. Marshall has failed

20  to demonstrate any genuine issue of material fact with regard to this claim.[4] In short, no jury

21  could conclude based on the evidence presented that the officers' conduct was "objectively

22  unreasonable" with regard to the amount of force used. Summary judgment is granted with

23  respect to Plaintiff's § 1983 excessive force claim.

24  _____

25      [4] Plaintiff's failure to address this claim, and the claims discussed below, in his opposition to Defendants'

26  motion for summary judgment is sufficient in and of itself to warrant dismissal of the claims. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment.").

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 11

2. **Plaintiff's § 1983 Claims Against Mercer Island Chief of Police Ed Holmes**

Plaintiff also brings claims under § 1983 against Mercer Island Police Chief Ed Holmes in both his individual and official capacities for his alleged failure to train Mercer Island officers with regard to RCW ch. 79A.60 and for his failure to prevent Mr. Marshall's alleged constitutional deprivations. (Dkt. No. 1 at ¶ 36.) The Mercer Island Defendants move for summary judgment on each of these claims. With regard to Plaintiff's claims against Chief Holmes in his individual capacity, Defendants argue among other things that Mr. Marshall has simply offered no proof that Chief Holmes failed to train his subordinates, acquiesced in a constitutional deprivation, or was otherwise callous or indifferent to Mr. Marshall's rights. (Dkt. No. 17 at 14.) With regard to the official capacity *Monell* claim, Defendants argue that Plaintiff has failed to point to a municipal policy or custom to support his allegations, and has offered no proof that the City or Chief Holmes was deliberately indifferent to any such policy or Mr. Marshall's constitutional rights. (Dkt. No. 17 at 15–16.) In his opposition motion, Plaintiff failed to either address or offer evidence relating to these claims.

a. *Individual Capacity Claim*

As Officer Herzog's superior, Chief Holmes could be liable in his individual capacity if he participated in the deprivation of Mr. Marshall's rights—*i.e.*, in the unlawful arrest of Mr. Marshall.[5] *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). As explained by the Ninth Circuit, a police chief's individual liability for a subordinate's unconstitutional conduct depends on whether he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991)). In short, "a supervisor can be liable in his individual capacity for his

_____

[5] To the extent Plaintiff's claims against Chief Holmes rely upon the alleged use of excessive force, they are without merit, given that there was no such underlying constitutional deprivation. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).

1    own culpable action or inaction in the training, supervision, or control of his subordinates; for his

2    acquiescence in the constitutional deprivation . . . ; or for conduct that showed a reckless or

3    callous indifference to the rights of others." *Id.* (quotation omitted).

4         Here, Plaintiff has offered <u>no</u> evidence to support his individual capacity claim against

5    Chief Holmes. (*See* Dkt. Nos. 21–23.) Indeed, Defendants expressly addressed this claim in their

6    motion for summary judgment (Dkt. No. 17 at 14), yet Plaintiff chose not to even discuss this

7    claim in his opposition. (*See* Dkt. No. 21.) Given the lack of analysis or evidence relating to this

8    claim, the Court finds that Plaintiff has failed to demonstrate any issue of fact to support his

9    individual-liability claim against Chief Holmes. Nothing provided to the Court demonstrates—or

10   even raises an issue about—whether Chief Holmes failed to appropriately train his subordinates,

11   failed to control them, or otherwise acquiesced in Mr. Marshall's constitutional deprivation.

12   Summary judgment is accordingly granted to Chief Holmes on this claim.

13                    **b.    *Official Capacity Claim***

14        Plaintiff's claim against Chief Holmes in his official capacity is the equivalent of an

15   action against the City of Mercer Island itself, since official capacity suits "generally represent[]

16   only another way of pleading an action against an entity of which an officer is an agent."[6] *Monell*

17   *v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 n.55 (1978); *see Larez*, 946 F.2d at 646. When

18   plaintiffs seek to impose liability on local governments under § 1983, which Mr. Marshall does

19   via his official-capacity claim against Chief Holmes, they "must prove that 'action pursuant to

20   official municipal policy' caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359

21   (2011) (citing *Monell*, 436 U.S. at 691)). In such actions, the City's actions must have been a

22   "moving force" behind the constitutional deprivation. *See Kentucky v. Graham*, 473 U.S. 159,

23   166 (1985). As the Supreme Court has explained, "a local government's decision not to train

24

25   _____

26        [6] Plaintiff's official capacity claim also fails to the extent it relies upon a failure to train with regard to the use of excessive force, since the Court concluded that no such violation was established. *See Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991).

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 13

certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" if the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)) (second alteration in *Connick*). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).

Here, Plaintiff similarly failed to address this claim in his opposition motion and presented <u>no</u> evidence relating to Mercer Island's alleged policy or deliberate indifference to his rights. (Dkt. No. 21–23.) Accordingly, the Court again finds that there is no genuine issue of material fact related to this claim, and Plaintiff has failed to rebut Defendants' argument that they are entitled to summary judgment on this claim. Summary judgment is granted as to Plaintiff's official capacity claim against Chief Holmes (and the City of Mercer Island).

### 3.   Plaintiff's § 1983 Claim Against the City of Mercer Island For Its Alleged Policy of Not Investigating Instances of Police Misconduct

Plaintiff also brings a claim against "unknown municipal policy makers" of the City of Mercer Island, alleging that "the City [] developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Mercer Island." (Dkt. No. 1 at ¶ 48.) Specifically, Mr. Marshall alleges that "it was the policy and/or custom of the City of Mercer Island to inadequately and improperly investigate incidents of police misconduct involving illegal seizing and searching of citizens who were enjoying the Seafair boat Races and Festivities upon Lake Washington[.]" (*Id.* at ¶ 50.) As with Plaintiff's official capacity claim against Chief Holmes, Defendants move for summary judgment on this *Monell* municipal liability claim because Mr. Marshall has offered no evidence to demonstrate that policymakers at Mercer Island decided to develop such a policy and because neither Officer Herzog nor Chief Holmes was aware of such a policy if it existed. (Dkt. No. 17 at 19.)

1    Here, just as with Plaintiff's official capacity *Monell* claim against Chief Holmes, Mr.

2    Marshall has failed to present any evidence to support his municipal liability claim or otherwise

3    address Defendants' arguments in his opposition. Specifically, Mr. Marshall has not

4    demonstrated any issue of material fact as to whether any such municipal policy actually existed,

5    or whether the City or any Mercer Island official was deliberately indifferent. Accordingly,

6    summary judgment is granted as to this claim as well.

7        **4.    State Law Claims**

8            **a.    False Arrest and Qualified Immunity**

9    Plaintiff also brings a false arrest claim under Washington law. Defendants move for

10   summary judgment on this claim as well, arguing that Officer Herzog is entitled to qualified

11   immunity under Washington law and that the claim fails because Officer Herzog had probable

12   cause to arrest Plaintiff. (Dkt. No. 17 at 19.) Both of Defendants' arguments are without merit.

13   "The gist of an action for false arrest . . . is the unlawful violation of a person's right of

14   personal liberty or the restraint of that person without legal authority." *McKinney v. City of*

15   *Tukwila*, 13 P.3d 631, 640 (Wash. App. 2000) (quotation omitted). However, an officer is

16   entitled to state law qualified immunity—which "rests on a different analysis than does qualified

17   immunity under section 1983"—where the officer "(1) carries out a statutory duty, (2) according

18   to procedures dictated to him by statute and superiors, and (3) acts reasonably." *Id.* at 640; *see*

19   *Arnold v. City of Lakewood*, No. C10-5907, 2012 WL 90472, at *7 (W.D. Wash. Jan. 11, 2012)

20   (applying state law qualified immunity). "For an arrest accomplished without a warrant, the

21   immunity is limited to situations where the officer reasonably believed the arrested party

22   committed a felony or to misdemeanor arrests where the arresting officer had reasonable cause to

23   believe the crime was being committed in his presence and he acted in good faith on that belief."

24   *Youker v. Douglas Cty.*, 258 P.3d 60, 68–69 (Wash. App. 2011).

25   Here, Officer Herzog is not entitled to state law qualified immunity. The reason is simple:

26   Where an officer consummates an arrest contrary to the plain terms of a statute, he does not

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 15

fulfill his statutory duty. *Staats v. Brown*, 991 P.2d 615, 627 (Wash. 2000). As described above, Mr. Marshall had not committed any crime, and no facts available to Officer Herzog suggested that Mr. Marshall was committing the misdemeanor offense of Boating Under the Influence. In short, Officer Herzog was not authorized under Washington law to arrest him. *See* RCW § 10.31.100 (officers may make warrantless arrests for felonies based on probable cause, and for misdemeanors and gross misdemeanors only when the offense is committed in the presence of the officer). Further, for the reasons explained above, the Court finds that Officer Herzog's decision to arrest Mr. Marshall for conduct that plainly did not constitute Boating Under the Influence was not "reasonable."[7] *See Staats*, 991 P.2d at 627 ("Nor can an arrest amounting to a statutory violation be 'reasonable'" where the suspect's conduct was not criminal under state law.). Accordingly, Defendants' summary judgment motion is denied with respect to Plaintiff's state-law false arrest claim.

### b.   Negligence

Finally, Plaintiff sues Chief Holmes and the City of Mercer Island for negligence. (Dkt. No. 1 at ¶ 63–67.) The thrust of this claim is that Chief Holmes failed to properly train his subordinates and failed to ensure that his officers "acted in accordance with the laws of the State of Washington." (*Id.* at ¶ 65.) Defendants move for summary judgment on this claim, arguing that "Washington law does not recognize the tort of negligence in this context[,]" and in any event, the "public duty doctrine" would bar Plaintiff's negligence claim. (Dkt. No. 17 at 20.) Again, Plaintiff failed to either discuss or provide evidence related to his negligence claim. Here, the Court agrees with Defendants, but need not delve deeply into whether a law enforcement officer may be held liable in negligence under Washington law or whether, under the circumstances of this case, the public duty doctrine would bar such a claim. By not addressing

---

[7] For the reasons discussed above—namely, that probable cause to arrest Mr. Marshall did not exist—the Court rejects Defendants' argument that Plaintiff's false arrest claim necessarily fails because probable cause existed.

1   Defendants' summary judgment assertions, Plaintiff has waived this unaddressed claim. *See*

2   *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *see also Foster v. City*

3   *of Fresno*, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("[F]ailure of a party to address a

4   claim in an opposition to a motion for summary judgment may constitute a waiver of that

5   claim.") (citation omitted)). For this reason, Defendants' motion for summary judgment is

6   granted as to Plaintiff's negligence claims.

7   **III.   CONCLUSION**

8          For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 17) is

9   GRANTED IN PART and DENIED IN PART. Specifically, summary judgment is GRANTED

10   as to Plaintiff's: (1) § 1983 excessive force claim against Officer Herzog; (2) § 1983 claims

11   against Mercer Island Police Chief Ed Holmes in both his individual and official capacities; (3)

12   § 1983 *Monell* claim against the City of Mercer Island; and (4) state-law negligence claims.

13   However, summary judgment is DENIED with regard to Officer Herzog's qualified immunity on

14   Plaintiff's § 1983 and state-law false arrest claims.

15          DATED this 2nd day of August 2013.

16

17

18

19

20

21                                                   _____

22                                                   John C. Coughenour
                                                     UNITED STATES DISTRICT JUDGE

23

24

25

26